1  Michael A. Dolan, Jr. (SBN 159456)
   DOLAN & ASSOCIATES
2  30699 Russell Ranch Road, Suite 280
   Westlake Village, California  91362
3  Telephone: (818) 316-0642
   Facsimile: (818)316-0744
4  Email:  michael@dolanassociates.net

5  Attorneys For Defendants, ABERCROMBIE &
   FITCH, CO.; ABERCROMBIE & FITCH
6  STORES, INC.; ABERCROMBIE & FITCH
   TRADING CO.
7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                 CV12-08734 GHK(MRWx)

11  WILLIAM STRATTON, an individual,    | Civil No.: _____

12            Plaintiff,                 | NOTICE OF REMOVAL OF
                                         | ACTION UNDER 28 U.S.C. §1441(b)
13       vs.                             | (DIVERSITY)

14  ABERCROMBIE & FITCH CO., an
    Ohio corporation; ABERCROMBIE &
15  FITCH STORES, INC., an Ohio
    corporation; ABERCROMBIE & FITCH
16  TRADING CO., an Ohio Corporation;
    DAISY ASHBURN, an individual;
17  BRIAN HILBURN, an individual; AIG
    MODEL & TALENT MANAGEMENT,
18  LLC a Mississippi limited liability
    company; DOES 1-25 inclusive; and
19  ROES 26-50, Inclusive.,

20            Defendants.

21

22

23       TO THE CLERK OF THE ABOVE-ENTITLED COURT:

24       PLEASE TAKE NOTICE that defendants ABERCROMBIE & FITCH, CO.;

25  ABERCROMBIE & FITCH STORES, INC.; ABERCROMBIE & FITCH TRADING

26  CO. hereby removes to this Court the State Court action described below.

27  ///

28  ///

w:\document\
18980\remova
l of
action.docx

On August 31, 2012 an action was commenced in the Superior Court of the State of California in and for the County of Los Angeles, entitled WILLIAM STRATTON Plaintiff, vs. ABERCROMBIE & FITCH CO., an Ohio corporation; ABERCROMBIE & FITCH STORES, INC., an Ohio corporation; ABERCROMBIE & FITCH TRADING CO., an Ohio Corporation; DAISY ASHBURN, an individual; BRIAN HILBURN, an individual; AIG MODEL & TALENT MANAGEMENT, LLC, a Mississippi limited liability company and DOES 1-25, Inclusive and ROES 26-50, Inclusive bearing Los Angeles Superior Court Case Number BC491420. A copy of the complaint is attached hereto as Exhibit "A".

I    JURISDICTION

A.    DIVERSITY OF CITIZENSHIP

This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332 because the citizenship of the parties is entirely diverse, and the amount in controversy, as alleged by Plaintiff, exceeds $75,000.00.

Plaintiff WILLIAM STRATTON ("Plaintiff") is a California citizen based on domicile, as he resides in Los Angeles County, California. (Comp. ¶6). Auto Insurance Co .v. Dyer 19 F. 3d 514, 520 (10 Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie evidence of the domicile.").

Defendant ABERCROMBIE & FITCH CO. was and is a corporation incorporated under the laws of the State of Delaware and having its principal place of business in the State of Ohio, ABERCROMBIE & FITCH STORES, INC. was and is a corporation incorporated under the laws of the State of Ohio and having its principal place of business in the State of Ohio, ABERCROMBIE & FITCH TRADING CO. was and is a corporation incorporated under the laws of the State of Ohio and having its principal place of business in the State of Ohio. Co-defendant DAISY ASHBURN resides and is domiciled in the State of Ohio. (Comp. ¶10). Co-defendant BRIAN HILBURN resides and is domiciled in the State of Mississippi. (Comp. ¶11). Co-defendant AIG MODEL & TALENT MANAGEMENT, LLC is a Mississippi limited liability company with its

1   principal place of business in Mississippi. (Comp ¶12). As established by these facts,

2   there is complete diversity of citizenship among Plaintiff and each of the Defendants

3   under 28 U.S.C. §1332(a).

4        B.   <u>AMOUNT IN CONTROVERSY</u>

5        Generally, the amount in controversy is determined from the allegations or prayer

6   stated in the complaint. <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289

7   (1938). Where the amount of damages sought by plaintiff is unclear from the complaint,

8   the defendant must present facts to support that the jurisdictional amount is satisfied.

9   <u>Gans v. Miles, Inc.</u>, 980 F 2d 564, 567 (9th Cir. 1992).

10        The amount in controversy is allegedly over $75,000.00. Because Plaintiff has not

11   clearly alleged an amount in controversy, Defendants ABERCROMBIE & FITCH, CO.;

12   ABERCROMBIE & FITCH STORES, INC.; ABERCROMBIE & FITCH TRADING

13   CO. will present facts to support the amount in controversy, as alleged by Plaintiff,

14   exceeds $75,000.00.

15        The issues herein involve the determination of liability for and damages suffered

16   stemming from a photo shoot which took place in Jackson, Mississippi. Among other

17   things, Plaintiff alleges that:

18       -  he was sexually abused and harassed at the shoot (Comp. ¶37);

19       -  Hilburn utilized unprofessional and pornographic methods

20         and procedures at the shoot. (Comp. ¶32);

21       -  Hilburn made photographs and video of Plaintiff for the purpose

22         of satisfying Hilburn's own prurient interests. (Comp. ¶33);

23       -  he is haunted by Hilburn's sexual abuse. (Comp. ¶37);

24       -  he was fraudulently induced by Ashburn to contact Hilburn,

25         pose nude and masturbate in front of him. (Comp. ¶38);

26       -  he has suffered severe emotional and mental distress, pain

27         anxiety, shame, anger, grief, humiliation, nervousness and

28         shock causing physiological symptoms, including, but not

DOLAN & ASSOCIATES

- 3 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

1    limited to, anxiety, depression, headaches and sleeplessness.

2    (Comp. ¶125);

3    Moreover, Plaintiff seeks to recover punitive damages and attorneys' fees. (Comp

4    ¶48, 56, 64, 84, 103, 112, 126; Comp. Prayer for Relief 2, 4, 6, 10, 13, 14, 16, 20).  In

5    determining the amount in controversy, district courts should consider the amount of

6    actual and punitive damages as well as attorney's fees if they are alleged to be

7    recoverable.  Nasiri v. Allstate Indemnity Co. 41 Fed. Apps. 76, 77-78 (9th Cir. 2002);

8    Galt F/S v. JSS Scandinavia, 142 F. 3d 1150, 1155 (9th Cir 1998).  Here, Plaintiff seeks to

9    recovery both punitive damages and attorney's fees.  Given the nature of the allegations

10   underpinning Plaintiff's claims, the alleged punitive damages and attorneys' fees will

11   themselves certainly be claimed at an amount in excess of the jurisdictional amount.

12   II   TIMELINES

13   This Notice if timely because it is filed within thirty (30) days of service of the

14   Summons and Complaint, as required by 28 U.S.C. §1446(b).  Defendants

15   ABERCROMBIE & FITCH, CO.; ABERCROMBIE & FITCH STORES, INC.;

16   ABERCROMBIE & FITCH TRADING CO. were served on September 11, 2012, and,

17   therefore, removal is proper through and including Thursday October 11, 2012.

18   III   CONSENT

19   The defense counsel identified in this pleading represents Defendants

20   ABERCROMBIE & FITCH, CO.; ABERCROMBIE & FITCH STORES, INC.;

21   ABERCROMBIE & FITCH TRADING CO.   Counsel for the aforementioned

22   defendants is unaware as to the status of service of the summons and complaint on

23   defendants BRIAN HILBURN, AIG MODEL & TALENT MANAGEMENT, LLC. and

24   DAISY ASHBURN .

25   ///

26   ///

27   ///

28   ///

DOLAN & ASSOCIATES

IV   OTHER PERTINENT INFORMATION

Pursuant to 28 U.S.C. §1446(a), Defendants file this Notice in the District Court of the United States for the district and division within which the State Court Action is pending.

Pursuant to 28 U.S.C. §1446(d), a copy of this Notice with its attachments will promptly be served on Plaintiff in the State Court Action, and notice thereof will be filed with the clerk of the United States District Court, Central District of California.

Dated:  October 11, 2012

DOLAN & ASSOCIATES

By _____
MICHAEL A. DOLAN, JR.
Attorneys for Defendants,
ABERCROMBIE & FITCH, CO.;
ABERCROMBIE & FITCH STORES,
INC.; ABERCROMBIE & FITCH
TRADING CO.

DOLAN & ASSOCIATES

w:\document\
18980\remova
l of
action.docx

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

EXHIBIT "A"

# ORIGINAL

1  PETER J. ZOMBER (SBN 091715)
   MATTHEW E. PANAGIOTIS (SBN 222965)
2  LAW OFFICES OF ZOMBER & PANAGIOTIS, LLP
   12424 Wilshire Boulevard, Suite 720
3  Los Angeles, CA 90025
   Telephone: (310) 405-0055
4  Facsimile: (310) 405-0056
   Email: pzomber@zplawla.com
5         mpanagiotis@zplawla.com

6  Attorneys for Plaintiff
   WILLIAM STRATTON

7

**FILED**
Los Angeles Superior Court

AUG 3 1 2012

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
        SHAUNYA WESLEY

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES – CENTRAL DISTRICT

FILE BY FAX

10

11  WILLIAM STRATTON, an individual,

12        Plaintiff,

13  vs.

14  ABERCROMBIE & FITCH CO., an Ohio
    corporation; ABERCROMBIE & FITCH STORES,
15  INC., an Ohio corporation; ABERCROMBIE &
    FITCH TRADING CO., an Ohio corporation;
16  DAISY ASHBURN, an individual; BRIAN
    HILBURN, an individual; AIG MODEL &
17  TALENT MANAGEMENT, LLC a Mississippi
    limited liability company; DOES 1 – 25, Inclusive;
18  and ROES 26-50, Inclusive,

19        Defendants.

20

21

Case No.:  **BC 4 9 1 4 2 0**

**COMPLAINT FOR:**

(1)  **FRAUD;**
(2)  **NEGLIGENT MISREPRESENTATION;**
(3)  **INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS;**
(4)  **NEGLIGENCE;**
(5)  **NEGLIGENT HIRING AND
     SUPERVISION;**
(6)  **FRAUD;**
(7)  **RESCISSION DUE TO FRAUD;**
(8)  **SEXUAL HARASSMENT;**
(9)  **INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS;**
(10) **NEGLIGENCE;**
(11) **BREACH OF CONTRACT**
(12) **BREACH OF FIDUCIARY DUTY; and**
(13) **DECLARATORY RELIEF**

22                                    **REQUEST FOR JURY TRIAL**

23

24

25

26

27  ///

28  ///

- 1 -
**COMPLAINT**

## INTRODUCTION

1.      Abercrombie & Fitch highly endorses a sexual predator and recommends that its employees be photographed and represented by that sexual predator.

2.      Abercrombie & Fitch is known for its famous photographer, Bruce Weber, and its racy marketing photography, frequently featuring semi-nude male and female models.  Store employees are recruited as models at casting calls held at Abercrombie & Fitch stores.  Abercrombie & Fitch gives a second hope to those employees not selected for these coveted modeling jobs by giving those employees' names, photographs and personal information to a modeling agent that they highly recommend.  However, Abercrombie & Fitch either has never researched that agent's background or actually knows that he is a sexual predator who likes to photograph Abercrombie & Fitch's employees in the nude.  That purported modeling agent and sexual predator is Brian Hilburn.

3.      Once they are under Hilburn's contractual control, Abercrombie & Fitch's young and vulnerable employees are instructed to pose nude and masturbate in front of Hilburn while he photographs and videotapes them.  Instead of being rewarded with a selection as a coveted model for Abercrombie & Fitch, the young employees are subjected to shameful and embarrassing sexual harassment.

4.      William "Billy" Stratton was one such employee.  Billy was a student at Penn State.  While shopping at Abercrombie & Fitch's store in State College, Pennsylvania, Billy was wooed by the store manager to accept a part-time job so that he could land one of Abercrombie & Fitch's coveted modeling jobs.  Abercrombie & Fitch's casting director, Defendant Daisy Ashburn, told Billy that he just missed getting a modeling job with the company, but that she could still help him with his modeling career.  Ashburn then gave Billy's name, photograph and personal information to Hilburn, who she said she knew well and highly endorsed.

5.      Hilburn then coerced Billy into flying to Jackson, Mississippi and signing a contract with him and his company, by telling Billy he could successfully promote his modeling career.  Once at Hilburn's office in Mississippi, Billy was fed more lies about the importance to Abercrombie & Fitch, and its famous photographer Bruce Weber, of being photographed nude with an erection.  Because Billy trusted Hilburn as his agent and someone who was so highly endorsed by Ashbur,

1   Abercrombie & Fitch's casting director, Billy agreed to pose nude for Hilburn. Billy was shocked and
2   horrified when he later learned that there was no legitimate purpose to the nude photographs taken by
3   Hilburn.

4
5                                              **THE PARTIES**

6         6.      Plaintiff William Stratton (hereinafter, "Plaintiff") is an individual residing and
7   domiciled in the County of Los Angeles, State of California.

8         7.      Plaintiff is informed and believes and based thereon alleges that Defendant
9   Abercrombie & Fitch Co. (hereinafter, "Abercrombie Co.") is an Ohio corporation with its principal
10  place of business in Ohio, and doing business in the County of Los Angeles, State of California.

11        8.      Plaintiff is informed and believes and based thereon alleges that Defendant
12  Abercrombie & Fitch Stores, Inc. (hereinafter, "Abercrombie Stores") is an Ohio corporation with its
13  principal place of business in Ohio, and doing business in the County of Los Angeles, State of
14  California.

15        9.      Plaintiff is informed and believes and based thereon alleges that Defendant
16  Abercrombie & Fitch Trading Co. (hereinafter, "Abercrombie Trading") is an Ohio corporation with
17  its principal place of business in Ohio, and doing business in the County of Los Angeles, State of
18  California.    Abercrombie Co., Abercrombie Stores and Abercrombie Trading are hereinafter
19  collectively referred to as "Abercrombie."

20        10.     Plaintiff is informed and believes and based thereon alleges that Defendant Daisy
21  Ashburn (hereinafter, "Ashburn") is an individual residing and domiciled in the State of Ohio, and
22  doing business in the County of Los Angeles, State of California. Plaintiff is further informed and
23  believes and based thereon alleges that Ashburn directs her business activities to California and travels
24  to California for business, including as recently as Spring 2012. Plaintiff is further informed and
25  believes and based thereon alleges that Ashburn is and was at all times alleged herein an authorized
26  agent and employee of Abercrombie and was at all times alleged herein acting in the course and scope
27  of her employment by Abercrombie.

28  ///

11. Plaintiff is informed and believes and based thereon alleges that Defendant Brian Hilburn (hereinafter, "Hilburn") is an individual residing and domiciled in the State of Mississippi, and doing business in the County of Los Angeles, State of California. Plaintiff is further informed and believes and based thereon alleges that Ashburn directs her business activities to California and travels to California for business.

12. Plaintiff is informed and believes and based thereon alleges that Defendant AIG Model & Talent Management, LLC (hereinafter, "AIG") is a Mississippi limited liability company with its principal place of business in Mississippi, and doing business in the County of Los Angeles, State of California. Plaintiff is further informed and believes and based thereon alleges that Ashburn directs her business activities to California and travels to California for business.

13. Plaintiff is informed and believes and based thereon alleges that pursuant to California Code of Civil Procedure § 474, that the fictitiously named Defendants sued herein as Does 1 through 25 and Roes 26-50, inclusive, and each of them, were in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate or otherwise, are presently unknown to Plaintiff and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference to a named defendant herein shall also refer to the Doe Defendants, Roe Defendants and each of them.

14. Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, were the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, partnership, employment, conspiracy, ownership, or joint venture.

15. Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged of each such Defendant were known to, authorized by, and/or ratified by the other Defendants, and each of them.

///

## FACTS COMMON TO ALL ALLEGATIONS

16.     Abercrombie is a clothing retailer, operating hundreds of stores throughout the United States, including several stores in the County of Los Angeles, State of California. Abercrombie also operates several affiliated brands. Abercrombie employs "models" as in-store customer service representatives.

17.     Abercrombie is known for its racy marketing photography, frequently featuring semi-nude male and female models. Abercrombie casts its store employees as models to be featured in its marketing campaigns. Abercrombie employs casting directors, including Ashburn, who travel to Abercrombie regional stores in the United States to hold "casting calls" for employees aspiring to become the next new face of Abercrombie. Abercrombie promotes its casting sessions, models, and photo shoots on its website.

18.     AIG holds itself out to be a full service model and talent agency engaged in representing models and talent with top agencies in major markets such as New York, New York, Los Angeles, California, Miami, Florida, and other U.S. and international markets.

19.     Plaintiff is informed and believes and based thereon alleges that Hilburn is the owner and/or principal officer of AIG. Hilburn holds himself out to be an agent engaged in representing models and talent.

20.     Plaintiff was born and raised in a small town near State College, Pennsylvania. In late 2009, while shopping at the Abercrombie store in State College, Plaintiff was approached by the store's manager, Abe Jaussen, and Abercrombie's district manager, Chelsea Falcioni, and asked if he wanted a job there. Plaintiff explained that he was did not live close by, was just in State College shopping for the day, and politely declined the offer. However, Mr. Jaussen and Ms. Falcioni persisted that Plaintiff reconsider a position at their store. They explained to Plaintiff that he would make a great Abercrombie model, but that he had to work at an Abercrombie store to be eligible for an Abercrombie modeling job. Mr. Jaussen and Ms. Falcioni then offered Plaintiff a part-time position whereby he would work just a few hours a week at the store solely for the purpose of qualifying to be an Abercrombie model. Plaintiff accepted their offer.

///

21.     Shortly thereafter, Ashburn then held a casting call for Abercrombie models at the State College store. As part of the casting call, Plaintiff was photographed by or at the direction of Ashburn and provided Ashburn with his name, date of birth, address, telephone number and email address. It was Plaintiff's understanding and belief that his photograph and personal information was to be used by Ashburn solely in connection with her possible recruitment of him as a model for Abercrombie. Neither Ashburn nor anyone else from Abercrombie informed or represented to Plaintiff that his photograph and personal information would be used for any other purpose or provided to third parties. Plaintiff did not authorize Ashburn or anyone else from Abercrombie to use or disclose his photograph and/or personal information for any other purpose or to any third parties.

22.     Without Plaintiff's knowledge or consent, Ashburn provided Hilburn with Plaintiff's name, photograph, date of birth, address, telephone number and email address.

23.     On February 18, 2010, Ashburn wrote to Plaintiff to inform him that while he had made the top 105 finalists for that year's campaign, he was not selected for the job. Ashburn then asked Plaintiff if he wanted her help pursuing a career in modeling. Plaintiff accepted Ashburn's offer. On February 26, 2010, Ashburn asked Plaintiff to send her more pictures of him and his brother, in whom Ashburn was also interested. Ashburn also told Plaintiff that she would send along his photographs and information to an agent that would contact him.

24.     As of March 17, 2010, Plaintiff had not heard back from either Ashburn or any agent she had contacted on his behalf. However, on March 15, 2010, Plaintiff was contacted by Hilburn of AIG. Hilburn was evasive when asked how he found Plaintiff. That day, Plaintiff wrote to Ashburn and asked her if she knew of AIG. Ashburn's response was evasive and nonresponsive. She did not tell Plaintiff whether or not she knew of AIG. Given that Ashburn failed to answer his question, on March 29, 2010, Plaintiff again asked Ashburn if she was familiar with AIG and Hilburn. Once again, Ashburn was evasive and nonresponsive. On March 31, 2010, for a third time, Plaintiff asked Ashburn about AIG and Hilburn. Finally, that day, Ashburn answered Plaintiff's question. Ashburn told Plaintiff that she knew Hilburn well, that he had great success with Abercrombie and that he was a great person.

///

- 6 -
**COMPLAINT**

25. Plaintiff is informed and believes, and based thereon alleges that Ashburn disclosed Plaintiff's name, photograph, date of birth, address, telephone number and email address to Hilburn and AIG, and then so highly endorsed Hilburn, in order to induce Plaintiff to sign a agent agreement with Hilburn and AIG and to be photographed by Hilburn nude and semi-nude. Plaintiff is further informed and believes, and based thereon alleges that Ashburn's conduct was done in an effort to benefit her career, to elicit financial gain, for other gain and/or to satisfy her own and others' prurient interests.

26. Plaintiff is informed and believes, and based thereon alleges that Ashburn has engaged in a pattern of similarly inappropriate behavior with other employees of Abercrombie and/or other individuals in the industry, including making similar representations regarding Hilburn and AIG, referring other aspiring models to Hilburn and AIG and disclosing the name, photograph, date of birth, address, telephone number and/or email address of other aspiring models to Hilburn and/or AIG.

27. Once Ashburn had so highly endorsed Hilburn, Plaintiff decided to try working with Hilburn to develop a modeling career. As someone who was raised in a small town, Plaintiff had no experience in the modeling industry and had no idea what to expect. However, based on Ashburn's comments, Plaintiff trusted Hilburn. Plaintiff sent Hilburn photographs and personal information. Hilburn then arranged for Plaintiff to fly to Jackson, Mississippi, where AIG has its office, to meet Plaintiff and for a photo shoot.

28. In late-April or early-May 2010, Plaintiff flew to Jackson, Mississippi. It was Plaintiff's first plane flight. Hilburn picked Plaintiff up at the airport and took him to dinner. Shortly after Plaintiff's arrival, Hilburn presented Plaintiff with a contract to sign before their photo shoot. That contract provided that Hilburn was to be Plaintiff's agent, whereby Hilburn and AIG would advise, counsel, and direct Plaintiff in the development and enhancement of Plaintiff's professional modeling career. Pursuant to the contract, Hilburn and AIG were entitled to twenty percent (20%) of Plaintiff's gross compensation earned from any source as a result of Plaintiff's activities in and throughout the modeling field. It was intended and anticipated by Plaintiff and Hilburn that Plaintiff would move to Los Angeles, sign with a local agency in Los Angeles, and work as a model in Los Angeles. Thus, the contract was to be performed in California.

1       29.    At dinner on Plaintiff's first night in Jackson, Mississippi, Hilburn told Plaintiff of his

2  success with Abercrombie and how he would promote Plaintiff. That night, Plaintiff stayed on the

3  couch at AIG's office. The next day, Hilburn took Plaintiff shopping for clothes to wear during their

4  photo shoot. That afternoon, they shot a few photographs around town, then went to dinner. While at

5  dinner, Hilburn told Plaintiff about Abercrombie's acclaimed photographer, Bruce Weber. Hilburn

6  said that Weber frequently shoots male models nude, including at Weber's home, and that several of

7  Hilburn's clients had posed nude for Weber. Hilburn also told Plaintiff that he had a relationship with

8  Weber, which would benefit Plaintiff's modeling career.

9       30.    After dinner, Hilburn drove Plaintiff back to AIG's office, where they started shooting

10  more photographs for Plaintiff's "modeling book." Hilburn asked Plaintiff to remove his shirt and

11  shoot a few pictures topless, which Plaintiff did. Hilburn then asked Plaintiff to remove his pants and

12  shoot some pictures in his underwear. Because Plaintiff trusted both Hilburn and Ashburn, and

13  because of Hilburn's relationship with Weber, Plaintiff agreed to pose in his underwear. Hilburn then

14  again told Plaintiff about how Weber demands that models pose nude and said Plaintiff should pose

15  nude in order that he become used to the process. Once Plaintiff was in his underwear, Hilburn

16  instructed Plaintiff to do whatever necessary to get an erection, including masturbating while looking

17  at pornography on his phone. Hilburn told Plaintiff: "these [photographs] are for Bruce [Weber]."

18  Plaintiff interpreted Hilburn's comment to mean that Weber would demand such photographs from his

19  models, and that Hilburn would send the photographs directly to Weber. Based on what Hilburn had

20  told him about Weber and Weber's methods, Plaintiff reasonably believed that such photographs were

21  legitimate and common in the modeling industry, and, further, that if they were sent directly to Weber

22  there would be a great benefit to Plaintiff's career. As such, Plaintiff agreed to Hilburn's direction.

23  Plaintiff was able to obtain an erection, but it dissipated once Hilburn began to photograph him.

24  Hilburn asked Plaintiff to again masturbate to erection in front of him, but Plaintiff refused.

25       31.    Hilburn told Plaintiff that the nude and semi-nude photographs Hilburn took of Plaintiff

26  were for Plaintiff's "book" and to be sent to Weber to promote Plaintiff's career. However, Plaintiff

27  has never seen the nude and semi-nude photographs Hilburn shot. The photographs were certainly

28  never made a part of Plaintiff's "book." Plaintiff is unaware of whether Hilburn or anyone else sent

1  the photographs to Weber.  Plaintiff is informed and believes and based thereon alleges that. Contrary
2  to Hilburn's representations, the nude and semi-nude photographs Hilburn shot were not made to
3  benefit Plaintiff's career.

4      32.    Hilburn's representations about what Abercrombie and Weber wanted insofar as
5  photographs of nude models with erections or other photographic results derived from unprofessional
6  and pornographic methods and procedures were false.

7      33.    Plaintiff is informed and believes, and based thereon alleges that Hilburn made the
8  photographs and video of Plaintiff for the purpose of satisfying Hilburn's own prurient interests, to
9  advance Hilburn's career and relationship with Abercrombie and its photographer Weber, for financial
10 gain and/or for other gain. Plaintiff is further informed and believes, and based thereon alleges that
11 Hilburn intended to elicit financial gain and/or other gain from distribution of the photographs and
12 video of Plaintiff as pornography.

13     34.    Plaintiff flew home from Jackson to Pennsylvania.  A few weeks later, Plaintiff flew to
14 Los Angeles to meet with Hilburn.  Hilburn had arranged for approximately 13 prospective young
15 male models to stay with him in a double room at the Roosevelt Hotel for nearly two weeks.  One of
16 the young men was forced to share a bed with Hilburn.  Hilburn drove the young men to various
17 modeling agencies, directing them to sign with the agencies of his choosing.  On the first day of the
18 trip, Plaintiff was told by Hilburn to sign with the Vision LA agency.  Plaintiff trusted Hilburn, and
19 signed with Vision LA that day.  However, over the course of the trip, the other young models signed
20 with various other agencies, all at Hilburn's direction and control.

21     35.    While in Los Angeles, Hilburn told Plaintiff that he was good friends with Ashburn and
22 regularly spoke with her.  Hilburn also told Plaintiff that he had recently spoken with Ashburn, and
23 that Hilburn was in Los Angeles with several of his new clients, including Plaintiff, for the purpose of
24 getting them signed with local agencies. Plaintiff is informed and believes and based thereon alleges
25 that Ashburn knew that Hilburn was ferrying young prospective models to Los Angeles to get them
26 signed with legitimate agencies there.  Plaintiff is further informed and believes and based thereon
27 alleges that Hilburn kept Ashburn apprised of his roster of new models and their Los Angeles agencies.
28 ///

36.     Indeed, in July 2010, shortly after signing with Hilburn and AIG and travelling to Los Angeles, Plaintiff was called to shoot for Abercrombie, which included several other clients of Hilburn and AIG. Plaintiff is informed and believes and based thereon alleges that Ashburn and Abercrombie were very familiar with Hilburn, and knew, or should have known, that Hilburn was shooting new/potential clients in Mississippi, nude and/or semi -nude, signing them to agreements, and then flying them to Los Angeles to get them signed with legitimate agencies there.

37.     Plaintiff now resides in Los Angeles. He has continued to work as a model, but is haunted by Hilburn's sexual abuse of him and by the fact that Ashburn so highly endorsed Hilburn even though she knew, or should have known, of Hilburn's conduct. As a result of being sexually abused and harassed by Hilburn, Plaintiff became depressed and sought treatment with a physician.

38.     Plaintiff was also fraudulently induced by Ashburn to contact Hilburn, pose nude and masturbate in front of Hilburn, and to enter into the contract with Hilburn and AIG. Ashburn knew, or should have known through reasonable diligence, that Hilburn routinely asked young, naive models, from small towns, to pose nude for him. She also knew, or should have known, that it served no legitimate purpose for those young models to pose nude for Hilburn. Further, Plaintiff is informed and believes and based thereon alleges that Ashburn knew, or should have known, that Hilburn was sending nude and semi-nude photographs of young models to Weber for no legitimate purpose. While at the Abercrombie shoot in July 2010, all of the models, including Plaintiff, were asked by Abercrombie's representative to shoot nude. None of those models that refused to pose nude, including Plaintiff, were used for the subject campaign. Only those models that agreed to shoot nude for Weber were used for the campaign. Ashburn and Abercrombie were aware of Weber's predilection for handsome, nude young men, and that Hilburn was supplying Weber with nude and semi-nude photographs of Hilburn's new young clients.

39.     Plaintiff is informed and believes, and based thereon alleges that Ashburn has engaged in a pattern of similarly inappropriate behavior with other employees of Abercrombie and/or other individuals in the industry, including making similar representations regarding Hilburn and AIG, referring other aspiring models to Hilburn and AIG and disclosing the name, photograph, date of birth, address, telephone number and/or email address of other aspiring models to Hilburn and/or AIG.

40.     Plaintiff is informed and believes, and based thereon alleges that Hilburn has engaged in a pattern of similarly inappropriate behavior with other employees of Abercrombie and/or other individuals in the modeling industry, including making similar false representations to and coercing other aspiring models to pose nude and engage in pornographic activities during which Hilburn takes pornographic videos and photographs for the purpose of satisfying his own prurient interests and/or to elicit financial or other gain from distribution of the images as pornography.  Plaintiff is further informed and believes, and based thereon alleges that Hilburn has made similar false representations to other employees of Abercrombie and/or other individuals in the modeling industry regarding the criteria for the industry jobs they were seeking and what others were looking for in photo and/or video shoots.  Plaintiff is further informed and believes, and based thereon alleges that Hilburn similarly represented to other individuals in the modeling industry that it was necessary for them to pose nude and engage in sexually explicit and pornographic behavior in order to obtain the industry jobs they were seeking.  Plaintiff is further informed and believes, and based thereon alleges that Hilburn took pornographic videos and photographs of other employees of Abercrombie and/or other individuals in the modeling industry engaging in pornographic activities for the purpose of satisfying his own prurient interests and/or to elicit financial gain or other gain from distribution of the images as pornography.

41.     Plaintiff is informed and believes, and based thereon alleges that Ashburn, individually and as the casting director and authorized agent of Abercrombie, was aware, or should have been aware, of Hilburn's intent to fraudulently induce Plaintiff to enter into the Agreement and to photograph and video Plaintiff posing nude and masturbating.  Plaintiff is further informed and believes, and based thereon alleges that Ashburn, individually and as the casting director and authorized agent of Abercrombie, agreed with the intentions of Hilburn and AIG and intended for Hilburn and AIG to commit the aforementioned wrongful acts.

///

///

///

///

## FIRST CAUSE OF ACTION

### FRAUD

#### (Against Abercrombie and Ashburn)

42.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.    Plaintiff is informed and believes and based thereon alleges that Ashburn is and was at all times alleged herein an authorized agent and employee of Abercrombie and was at all times alleged herein acting in the course and scope of her employment by Abercrombie.

44.    Plaintiff is informed and believes, and based thereon alleges that Ashburn, as a Casting Director for Abercrombie and Hollister, initially concealed from Plaintiff that she knew Hilburn; that she intended to, and later in fact did, disclose Plaintiff's name, photograph, date of birth, address, telephone number and email address to Hilburn; that Hilburn intended to photograph and video Plaintiff in the nude and/or masturbating; that Hilburn did not intend to use those nude and semi-nude photographs and video to "build Plaintiff's book," to promote Plaintiff's career, or for any other legitimate purpose; that Hilburn intended to disclose those nude and semi-nude photographs and video to others including, but not limited to, Ashburn, others at Abercrombie and Weber; and that Ashburn intended to elicit financial or other gain and/or to benefit from the nude and semi-nude photographs of Plaintiff taken by Hilburn. Ashburn, as a casting director for Abercrombie, Plaintiff's employer, had a duty to disclose these facts to Plaintiff. Plaintiff is informed and believes, and based thereon alleges that Ashburn concealed these facts from Plaintiff in order to benefit her career, to elicit financial gain, for other gain and/or to satisfy her own prurient interests, and with the intent of inducing Plaintiff to sign an agreement with Hilburn and AIG, and with the intent to defraud Plaintiff.

45.    Plaintiff was unaware that Hilburn was anything other than a well-respected, trustworthy, ethical and highly experienced agent for models. Plaintiff believed that Hilburn would merely assist Plaintiff in navigating the challenging modeling industry, and that Hilburn would provide Plaintiff with counsel and advice concerning general practices in the industry.

46.    Plaintiff was unaware of Hilburn's intentions, including, but not limited to, Hilburn's true intentions to photograph and video Plaintiff in the nude and masturbating, and would not have

- 12 -
COMPLAINT

1 traveled to Jackson, Mississippi and participated in the photo shoot with Hilburn, and would not have

2 entered into the contract with Hilburn and AIG, had he been aware of such facts.

3       47.     As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

4 of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

5 humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

6 anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other incidental

7 and consequential damages to be established at the time of trial. The amount of Plaintiff's damages is

8 not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

9 When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

10 this complaint accordingly.

11      48.     Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

12 of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

13 Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

14 fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

15 to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

16 the exact amount of such damages subject to proof at the time of trial.

17

18                          **SECOND CAUSE OF ACTION**

19                        **NEGLIGENT MISREPRESENTATION**

20                         **(Against Abercrombie and Ashburn)**

21      49.     Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

22 in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

23      50.     Plaintiff is informed and believes and based thereon alleges that Ashburn is and was at

24 all times alleged herein an authorized agent and employee of Abercrombie and was at all times alleged

25 herein acting in the course and scope of her employment by Abercrombie.

26      51.     Plaintiff is informed and believes, and based thereon alleges that Ashburn did not

27 believe, or had no grounds, let alone reasonable grounds, to believe, that Hilburn was a well-respected,

28 trustworthy, ethical and highly experienced agent for models. Plaintiff is further informed and

- 13 -
**COMPLAINT**

1   believes, and based thereon alleges that Ashburn knew, or through the exercise of reasonable diligence

2   should have known, that Hilburn intended to photograph and video Plaintiff in the nude and/or

3   masturbating; that Hilburn did not intend to use those nude and semi-nude photographs and video to

4   "build Plaintiff's book," to promote Plaintiff's career, or for any other legitimate purpose; that Hilburn

5   intended to disclose those nude and semi-nude photographs and video to others including, but not

6   limited to, Ashburn, others at Abercrombie and Weber; and that Ashburn intended to elicit financial or

7   other gain and/or to benefit from the nude and semi-nude photographs of Plaintiff taken by Hilburn.

8       52.     Plaintiff is informed and believes, and based thereon alleges that Ashburn

9   misrepresented to Plaintiff: that Hilburn was a well-respected, trustworthy, ethical and highly

10  experienced agent for models; that Hilburn intended to photograph and video Plaintiff in the nude

11  and/or masturbating; that Hilburn did not intend to use those nude and semi-nude photographs and

12  video to "build Plaintiff's book," to promote Plaintiff's career, or for any other legitimate purpose; that

13  Hilburn intended to disclose those nude and semi-nude photographs and video to others including, but

14  not limited to, Ashburn, others at Abercrombie and Weber; and that Ashburn intended to elicit

15  financial or other gain and/or to benefit from the nude and semi-nude photographs of Plaintiff taken by

16  Hilburn.

17      53.     Plaintiff is informed and believes, and based thereon alleges that Ashburn intended to

18  induce Plaintiff to rely on her misrepresentations concerning Hilburn and AIG in order to induce

19  Plaintiff to sign an agreement with Hilburn and AIG, and to be photographed nude and/or semi-nude

20  by Hilburn, in an effort to benefit her career, to elicit financial gain, for other gain and/or to satisfy her

21  own prurient interests.

22      54.     Plaintiff was unaware that Hilburn was anything other than a well-respected,

23  trustworthy, ethical and highly experienced agent for models; that Hilburn intended to photograph and

24  video Plaintiff in the nude and/or masturbating; that Hilburn did not intend to use those nude and semi-

25  nude photographs and video to "build Plaintiff's book," to promote Plaintiff's career, or for any other

26  legitimate purpose; that Hilburn intended to disclose those nude and semi-nude photographs and video

27  to others including, but not limited to, Ashburn, others at Abercrombie and Weber; and/or that

28  Ashburn intended to elicit financial or other gain and/or to benefit from the nude and semi-nude

1  photographs of Plaintiff taken by Hilburn. Plaintiff believed that Ashburn and Hilburn would merely

2  assist Plaintiff in navigating the challenging modeling industry.

3      55.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

4  of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

5  humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

6  anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other incidental

7  and consequential damages to be established at the time of trial. The amount of Plaintiff's damages is

8  not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

9  When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

10 this complaint accordingly.

11     56.    Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

12 of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

13 Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

14 fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

15 to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

16 the exact amount of such damages subject to proof at the time of trial.

17

18                          **THIRD CAUSE OF ACTION**

19              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

20                      **(Against Abercrombie and Ashburn)**

21     57.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

22 in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

23     58.    Plaintiff is informed and believes and based thereon alleges that Ashburn is and was at

24 all times alleged herein an authorized agent and employee of Abercrombie and was at all times alleged

25 herein acting in the course and scope of her employment by Abercrombie.

26     59.    Plaintiff is informed and believes, and based thereon alleges that Ashburn disclosed

27 Plaintiff's name, photograph, date of birth, address, telephone number and email address to Hilburn

28 and AIG, and then so highly endorsed Hilburn, in order to induce Plaintiff to sign an agent agreement

1    with Hilburn and AIG and pose nude for Hilburn.  Plaintiff is further informed and believes, and based

2    thereon alleges that Ashburn's conduct was done in an effort to benefit her career, to elicit financial

3    gain, for other gain and/or to satisfy her own prurient interests.

4         60.    Plaintiff is informed and believes, and based thereon alleges that Ashburn knew that

5    Hilburn was not a well-respected, trustworthy, ethical and highly experienced agent for models; that

6    Hilburn intended to photograph and video Plaintiff in the nude and/or masturbating; that Hilburn did

7    not intend to use those nude and semi-nude photographs and video to "build Plaintiff's book," to

8    promote Plaintiff's career, or for any other legitimate purpose; that Hilburn intended to disclose those

9    nude and semi-nude photographs and video to others including, but not limited to, Ashburn, others at

10   Abercrombie and Weber; and that Ashburn intended to elicit financial or other gain and/or to benefit

11   from the nude and semi-nude photographs of Plaintiff taken by Hilburn.

12        61.    Plaintiff is informed and believes, and based thereon alleges that Ashburn engaged in

13   the aforementioned conduct with the intention of causing Plaintiff emotional distress, and/or with

14   reckless disregard of Plaintiff's rights and the probability of causing Plaintiff emotional distress.

15        62.    Ashburn's conduct was so outrageous as to exceed all bounds of that usually tolerated

16   in a civilized community.  Plaintiff is informed and believes, and based thereon alleges that Ashburn

17   intended to injure Plaintiff and/or realized that her conduct would injure Plaintiff.

18        63.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

19   of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

20   humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

21   anxiety, depression, headaches and sleeplessness.  Additionally, Plaintiff has suffered other incidental

22   and consequential damages to be established at the time of trial.  The amount of Plaintiff's damages is

23   not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

24   When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

25   this complaint accordingly.

26        64.    Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

27   of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

28   Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

- 16 -
**COMPLAINT**

1   fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

2   to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

3   the exact amount of such damages subject to proof at the time of trial.

4

5                          **FOURTH CAUSE OF ACTION**

6                               **NEGLIGENCE**

7                      **(Against Abercrombie and Ashburn)**

8           65.     Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

9   in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

10          66.     Plaintiff is informed and believes and based thereon alleges that Ashburn is and was at

11  all times alleged herein an authorized agent and employee of Abercrombie and was at all times alleged

12  herein acting in the course and scope of her employment by Abercrombie.

13          67.     Ashburn and Abercrombie had a duty to Plaintiff, as their employee and potential

14  model, to properly, adequately and thoroughly investigate and research the background and credentials

15  of Hilburn and AIG before disclosing Plaintiff's name, photograph, date of birth, address, telephone

16  number and email address to Hilburn and AIG, and before highly endorsing Hilburn and AIG to

17  Plaintiff.  Ashburn and Abercrombie breached their duty to Plaintiff by failing to perform any

18  investigation or research, let alone proper, adequate and thorough investigation and research, into the

19  background and credentials of Hilburn, a sexual predator, and his company AIG.

20          68.     Ashburn, as the employee and authorized agent of Abercrombie, also had a duty to

21  Plaintiff, Abercrombie's employee and potential model, to inform Plaintiff of all material information

22  she knew about Hilburn and AIG, as well as her relationship with Hilburn and AIG and how she stood

23  to benefit from Plaintiff signing an agreement with Hilburn and AIG and being photographed nude and

24  semi-nude by Hilburn, including, but not limited to, the fact that Ashburn knew that Hilburn was not a

25  well-respected, trustworthy, ethical and highly experienced agent for models; that Hilburn intended to

26  photograph and video Plaintiff in the nude and/or masturbating; that Hilburn did not intend to use those

27  nude and semi-nude photographs and video to "build Plaintiff's book," to promote Plaintiff's career, or

28  for any other legitimate purpose; that Hilburn intended to disclose those nude and semi-nude

                                    - 17 -
                                  **COMPLAINT**

1  photographs and video to others including, but not limited to, Ashburn, others at Abercrombie and
2  Weber; and that Ashburn intended to elicit financial or other gain and/or to benefit from the nude and
3  semi-nude photographs of Plaintiff taken by Hilburn. Ashburn breached her duty to Plaintiff by failing
4  to disclose all material information she knew about Hilburn and AIG, as well as her relationship with
5  Hilburn and AIG and how she stood to benefit from Plaintiff signing an agreement with Hilburn and
6  AIG and being photographed nude and semi-nude by Hilburn, including, but not limited to, the
7  aforementioned facts.

8      69.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each
9  of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,
10 humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,
11 anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other incidental
12 and consequential damages to be established at the time of trial. The amount of Plaintiff's damages is
13 not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.
14 When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend
15 this complaint accordingly.

16     70.    At the time Defendants, and each of them, did each of the acts alleged herein by
17 incorporation, Defendants, and each of them, knew, or in the exercise of reasonable care, should have
18 known, that such acts would cause Plaintiff to suffer severe emotional distress.

19

20                          **FIFTH CAUSE OF ACTION**

21                    **NEGLIGENT HIRING AND SUPERVISION**

22                              **(Against Abercrombie)**

23     71.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained
24 in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

25     72.    Plaintiff is informed and believes and based thereon alleges that at the time
26 Abercrombie hired Ashburn and during the course of her employment by Abercrombie, Abercrombie
27 was aware, or should have been aware, that Ashburn would be in possession of and/or have access to
28 the personal information, including, but not limited to, the names, dates of birth, addresses, email

1  addresses and photographs, of employees of Abercrombie, such as Plaintiff. Abercrombie had a duty
2  to Plaintiff, as its employee, to ensure that Ashburn safeguarded Plaintiff's personal information and
3  did not disclose it to third parties without Plaintiff's knowledge and express consent. Abercrombie
4  breached its duty to Plaintiff by failing to ensure that Ashburn safeguarded Plaintiff's personal
5  information and did not disclose it to third parties without his knowledge and express consent.

6      73.    Plaintiff is informed and believes and based thereon alleges that at the time
7  Abercrombie hired Ashburn, and during the course of her employment by Abercrombie, Abercrombie
8  was aware, or should have been aware, that Ashburn would be interacting with and offering highly
9  desirable modeling positions to young employees of Abercrombie. Abercrombie had a duty to
10 properly and adequately guide, direct, instruct and assist Ashburn in her interactions with its
11 employees, including specifically Plaintiff, and to ensure that Ashburn acted appropriately when
12 interacting with its employees, including specifically Plaintiff. Abercrombie breached its duty to
13 Plaintiff by failing to properly and adequately guide, direct, instruct and assist Ashburn in her
14 interactions with its employees, including specifically Plaintiff, and by failing to ensure that Ashburn
15 acted appropriately when interacting with its employees, including specifically Plaintiff.

16     74.    Ashburn, as Abercrombie's employee, failed to properly, adequately and thoroughly
17 investigate and research the background and credentials of Hilburn and AIG before disclosing
18 Plaintiff's name, photograph, date of birth, address, telephone number and email address to Hilburn
19 and AIG, and before highly endorsing Hilburn and AIG to Plaintiff.

20     75.    Ashburn, as Abercrombie's employee, failed to inform Plaintiff of all material
21 information she knew about Hilburn and AIG, as well as her relationship with Hilburn and AIG and
22 how she stood to benefit from Plaintiff signing an agreement with Hilburn and AIG and being
23 photographed nude and semi-nude by Hilburn, including, but not limited to, the fact that Ashburn
24 knew that Hilburn was not a well-respected, trustworthy, ethical and highly experienced agent for
25 models; that Hilburn intended to photograph and video Plaintiff in the nude and/or masturbating; that
26 Hilburn did not intend to use those nude and semi-nude photographs and video to "build Plaintiff's
27 book," to promote Plaintiff's career, or for any other legitimate purpose; that Hilburn intended to
28 disclose those nude and semi-nude photographs and video to others including, but not limited to,

1 │ Ashburn, others at Abercrombie and Weber; and that Ashburn intended to elicit financial or other gain

2 │ and/or to benefit from the nude and semi-nude photographs of Plaintiff taken by Hilburn.

3 │     76.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

4 │ of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

5 │ humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

6 │ anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other incidental

7 │ and consequential damages to be established at the time of trial. The amount of Plaintiff's damages is

8 │ not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

9 │ When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

10 │ this complaint accordingly.

11 │     77.    At the time Defendants, and each of them, did each of the acts alleged herein by

12 │ incorporation, Defendants, and each of them, knew, or in the exercise of reasonable care, should have

13 │ known, that such acts would cause Plaintiff to suffer severe emotional distress.

14 │

15 │                     **SIXTH CAUSE OF ACTION**

16 │                             **FRAUD**

17 │                **(Against Hilburn and AIG)**

18 │     78.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

19 │ in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

20 │     79.    Plaintiff is informed and believes, and based thereon alleges that Hilburn intentionally

21 │ misrepresented to Plaintiff and concealed from Plaintiff the true extent and veracity of Hilburn's

22 │ background, experience, credentials and ability to assist Plaintiff with his career in order to induce

23 │ Plaintiff to, among other things: travel from his home to AIG's office in Jackson, Mississippi; to enter

24 │ into an agreement with Hilburn and AIG whereby Hilburn and AIG would serve as Plaintiff's "agent"

25 │ and collect commissions on money earned by Plaintiff as a model; and agree to pose nude and

26 │ masturbate while being photographed and videoed by Hilburn. Plaintiff is further informed and

27 │ believes, and based thereon alleges that Hilburn also concealed from Plaintiff his true intentions to

28 │ photograph and video Plaintiff in the nude and masturbating for no legitimate purpose.

1      80.    In reliance on the representations made to him by Hilburn, in late-April or early-May

2 2010, Plaintiff flew to Jackson, Mississippi; agreed to have Hilburn and AIG serve as his agent; signed

3 a contract with Hilburn and AIG whereby Hilburn and AIG would serve as Plaintiff's "agent" and

4 Hilburn and AIG would be entitled to a 20% commission on all gross revenues earned by Plaintiff in

5 the modeling industry; agreed to be photographed by Hilburn while posing nude and semi-nude, with

6 an erection and while masturbating; agreed to meet Hilburn in Los Angeles and stay with him and 12

7 other young men in a hotel room; and agreed to enter into an agency agreement with Vision LA. Had

8 Plaintiff been aware of Hilburn's true credentials and intentions, Plaintiff would not have done the

9 aforementioned acts.

10      81.    Hilburn's representations about his background and experience were false. Hilburn's

11 representations about the need for Plaintiff to pose nude and semi-nude and with an erection derived

12 from unprofessional and pornographic methods and procedures and were false. The photographs and

13 video taken by Hilburn of Plaintiff were never used to build Plaintiff's "book" or to promote Plaintiff's

14 career. Plaintiff is informed and believes, and based thereon alleges that Hilburn induced Plaintiff to

15 travel to Mississippi, induced Plaintiff to sign a contract with Hilburn and made the photographs and

16 video of Plaintiff posing nude and semi-nude, masturbating and with an erection for the purpose of

17 satisfying Hilburn's own prurient interests, others' prurient interests, and to elicit financial or other

18 gain resulting from distribution of the photographs and video of Plaintiff.

19      82.    Plaintiff trusted Hilburn and had no reason to doubt Hilburn's credibility and intentions,

20 especially since Plaintiff was a young man, new to the industry and since Hilburn and AIG came so

21 highly recommended by Ashburn, the casting director for Abercrombie.

22      83.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

23 of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

24 humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

25 anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other incidental

26 and consequential damages to be established at the time of trial. The amount of Plaintiff's damages is

27 not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

28 When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

1  this complaint accordingly.

2      84.    Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

3  of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

4  Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

5  fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

6  to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

7  the exact amount of such damages subject to proof at the time of trial.

8

9                        **SEVENTH CAUSE OF ACTION**

10                        **RESCISSION DUE TO FRAUD**

11                        **(Against Hilburn and AIG)**

12      85.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

13  in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

14      86.    Plaintiff is informed and believes, and based thereon alleges that Hilburn intentionally

15  misrepresented to Plaintiff and concealed from Plaintiff the true extent and veracity of Hilburn's

16  background, experience, credentials and ability to assist Plaintiff with his career in order to induce

17  Plaintiff to, among other things: travel from his home to AIG's office in Jackson, Mississippi; to enter

18  into an agreement with Hilburn and AIG where by Hilburn and AIG would serve as Plaintiff's "agent"

19  and collect commissions on money earned by Plaintiff as a model; and agree to pose nude and

20  masturbate while being photographed and videoed by Hilburn.  Plaintiff is further informed and

21  believes, and based thereon alleges that Hilburn also concealed from Plaintiff his true intentions to

22  photograph and video Plaintiff in the nude and masturbating for no legitimate purpose.

23      87.    In reliance on the representations made to him by Hilburn, in late-April or early-May

24  2010, Plaintiff flew to Jackson, Mississippi; agreed to have Hilburn and AIG serve as his agent; signed

25  a contract with Hilburn and AIG whereby Hilburn and AIG would be entitled to a 20% commission on

26  all gross revenues earned by Plaintiff in the modeling industry; agreed to be photographed by Hilburn

27  while posing nude and semi-nude, with an erection and while masturbating; agreed to meet Hilburn in

28  Los Angeles and stay with him and 12 other young me in a hotel room; agreed to enter into an agency

1 agreement with Vision LA. Had Plaintiff been aware of Hilburn's true credentials and intentions,
2 Plaintiff would not have entered into the contract with Hilburn and AIG.

3     88.     Hilburn's representations about his background and experience were false. Hilburn's
4 representations about the need for Plaintiff to pose nude and semi-nude and with an erection derived
5 from unprofessional and pornographic methods and procedures and were false. The photographs and
6 video taken by Hilburn of Plaintiff were never used to build Plaintiff's "book" or to promote Plaintiff's
7 career. Plaintiff is informed and believes, and based thereon alleges that Hilburn induced Plaintiff to
8 travel to Mississippi, induced Plaintiff to sign a contract with Hilburn and AIG, and made the
9 photographs and video of Plaintiff posing nude and semi-nude, masturbating and with an erection for
10 the purpose of satisfying Hilburn's own prurient interests, others' prurient interests, and to elicit
11 financial or other gain resulting from distribution of the photographs and video of Plaintiff.

12     89.     Plaintiff trusted Hilburn and had no reason to doubt Hilburn's credibility and intentions,
13 especially since Plaintiff was a young man, new to the industry and since Hilburn and AIG came so
14 highly recommended by Ashburn, the casting director for Abercrombie.

15     90.     In reliance on the representations made to him by Hilburn, on or around March 3, 2011,
16 Plaintiff entered into the contract with AIG and Hilburn. Had Plaintiff been aware of Hilburn's true
17 credentials and intentions, Plaintiff would not have entered into a contract with Hilburn and AIG.

18     91.     Plaintiff has fully performed all of his obligations pursuant to his contract with Hilburn
19 and AIG, excluding only those the performance of which was prevented or excused.

20     92.     As a direct and proximate result of the aforesaid fraudulent conduct by Defendants, and
21 each of them, Plaintiff was induced to enter into the contract with Hilburn and AIG, and to incur
22 damages.

23     93.     As a result of Defendants' wrongful, fraudulent conduct, Plaintiff's contract with
24 Hilburn and AIG should be rescinded.

25 ///
26 ///
27 ///
28 ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### EIGTH CAUSE OF ACTION

### SEXUAL HARASSMENT

### (Against Hilburn and AIG)

94.     Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

95.     Shortly after his arrival in Jackson, Mississippi, Plaintiff signed a contract with Hilburn and AIG whereby Hilburn and AIG would act as Plaintiff's "agent" and Hilburn and AIG would be entitled to a 20% commission on all gross revenues earned by Plaintiff in the modeling industry.

96.     As a result of Plaintiff's contract with Hilburn and AIG, a business, service, professional and/or special relationship existed between Plaintiff, on the one hand, and Hilburn and AIG, on the other hand.

97.     At Hilburn's direction and instruction, Plaintiff posed nude and semi-nude. Once Plaintiff was in his underwear, Hilburn instructed Plaintiff to do whatever necessary to get an erection, including masturbating while looking at pornography on his phone.  Hilburn told Plaintiff: "these [photographs] are for Bruce [Weber]."  Plaintiff interpreted Hilburn's comment to mean that Weber would demand such photographs from his models, and that Hilburn would send the photographs directly to Weber.  Based on what Hilburn had told him about Weber and Weber's methods, Plaintiff reasonably believed that such photographs were legitimate and common in the modeling industry, and, further, that if they were sent directly to Weber there would be a great benefit to Plaintiff's career.  As such, Plaintiff agreed to Hilburn's direction.  Plaintiff was able to obtain an erection, but it dissipated once Hilburn began to photograph him.  Hilburn asked Plaintiff to again masturbate to erection in front of him, but Plaintiff refused.

98.     Hilburn told Plaintiff that the nude and semi-nude photographs Hilburn took of Plaintiff were for Plaintiff's "book" and to be sent to Weber to promote Plaintiff's career.  However, Plaintiff has never seen the nude and semi-nude photographs Hilburn shot.  The photographs were certainly never made a part of Plaintiff's "book."  Plaintiff is unaware of whether Hilburn or anyone else sent the photographs to Weber.  Plaintiff is informed and believes and based thereon alleges that. Contrary to Hilburn's representations, the nude and semi-nude photographs Hilburn shot were not made to

- 24 -
**COMPLAINT**

1  benefit Plaintiff's career.

2      99.    Hilburn's representations about what Abercrombie and Weber wanted insofar as
3  photographs of nude models with erections or other photographic results derived from unprofessional
4  and pornographic methods and procedures and were false.

5      100.    Plaintiff is informed and believes, and based thereon alleges that Hilburn made the
6  photographs and video of Plaintiff for the purpose of satisfying Hilburn's own prurient interests, to
7  advance Hilburn's career and relationship with Abercrombie and its photographer Weber, for financial
8  gain and/or for other gain. Plaintiff is further informed and believes, and based thereon alleges that
9  Hilburn intended to elicit financial gain and/or other gain from distribution of the photographs and
10  video of Plaintiff as pornography.

11      101.    Because Plaintiff had entered into a contract with Hilburn and AIG, and because
12  Plaintiff was staying with Hilburn in Jackson, Mississippi, Plaintiff was unable to easily terminate his
13  relationship with Hilburn and AIG.

14      102.    Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger,
15  grief, humiliation, nervousness and shock causing physiological symptoms, including, but not limited
16  to, anxiety, depression, headaches and sleeplessness. Additionally, Plaintiff has suffered other
17  incidental and consequential damages to be established at the time of trial. The amount of Plaintiff's
18  damages is not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this
19  Court. When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to
20  amend this complaint accordingly.

21      103.    Plaintiff is informed and believes and based thereon alleges that the aforementioned acts
22  of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of
23  Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,
24  fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate
25  to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,
26  the exact amount of such damages subject to proof at the time of trial.

27  ///

28  ///

### NINTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against Hilburn and AIG)

104.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

105.   Plaintiff is informed and believes, and based thereon alleges that Hilburn intentionally misrepresented to Plaintiff and concealed from Plaintiff the true extent and veracity of Hilburn's background, experience, credentials and ability to assist Plaintiff with his career in order to induce Plaintiff to, among other things: travel from his home to AIG's office in Jackson, Mississippi; to enter into an agreement with Hilburn and AIG whereby Hilburn and AIG would serve as Plaintiff's "agent" and collect commissions on money earned by Plaintiff as a model; and agree to pose nude and masturbate while being photographed and videoed by Hilburn.   Plaintiff is further informed and believes, and based thereon alleges that Hilburn also concealed from Plaintiff his true intentions to photograph and video Plaintiff in the nude and masturbating for no legitimate purpose.

106.   In reliance on the representations made to him by Hilburn, in late-April or early-May 2010, Plaintiff flew to Jackson, Mississippi; agreed to have Hilburn and AIG serve as his agent; signed a contract with Hilburn and AIG whereby Hilburn and AIG would serve as Plaintiff's "agent" and Hilburn and AIG would be entitled to a 20% commission on all gross revenues earned by Plaintiff in the modeling industry; agreed to be photographed by Hilburn while posing nude and semi-nude, with an erection and while masturbating; agreed to meet Hilburn in Los Angeles and stay with him and 12 other young me in a hotel room; and agreed to enter into an agency agreement with Vision LA.  Had Plaintiff been aware of Hilburn's true credentials and intentions, Plaintiff would not have done the aforementioned acts.

107.   Hilburn's representations about his background and experience were false.  Hilburn's representations about the need for Plaintiff to pose nude and semi-nude and with an erection derived from unprofessional and pornographic methods and procedures and were false.  The photographs and video taken by Hilburn of Plaintiff were never used to build Plaintiff's "book" or to promote Plaintiff's career.  Plaintiff is informed and believes, and based thereon alleges that Hilburn induced Plaintiff to

1  travel to Mississippi, induced Plaintiff to sign a contract with Hilburn and made the photographs and

2  video of Plaintiff posing nude and semi-nude, masturbating and with an erection for the purpose of

3  satisfying Hilburn's own prurient interests, others' prurient interests, and to elicit financial or other

4  gain resulting from distribution of the photographs and video of Plaintiff.

5       108.   Plaintiff trusted Hilburn and had no reason to doubt Hilburn's credibility and intentions,

6  especially since Plaintiff was a young man, new to the industry and since Hilburn and AIG came so

7  highly recommended by Ashburn, the casting director for Abercrombie.

8       109.   Plaintiff is informed and believes, and based thereon alleges that Hilburn, individually

9  and on behalf of AIG, engaged in the aforementioned conduct with the intention of causing Plaintiff

10  emotional distress, and/or with reckless disregard of Plaintiff's rights and the probability of causing

11  Plaintiff emotional distress.

12       110.   The conduct of Hilburn and AIG was so outrageous as to exceed all bounds of that

13  usually tolerated in a civilized community.   Plaintiff is informed and believes, and based thereon

14  alleges that Hilburn, individually and on behalf of AIG, intended to injure Plaintiff and/or realized that

15  his conduct would injure Plaintiff.

16       111.   As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

17  of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

18  humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

19  anxiety, depression, headaches and sleeplessness.   Additionally, Plaintiff has suffered other incidental

20  and consequential damages to be established at the time of trial.   The amount of Plaintiff's damages is

21  not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

22  When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

23  this complaint accordingly.

24       112.   Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

25  of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

26  Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

27  fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

28  to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

1    the exact amount of such damages subject to proof at the time of trial.

2

3                          **TENTH CAUSE OF ACTION**

4                               **NEGLIGENCE**

5                          **(Against Hilburn and AIG)**

6        113.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

7    in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

8        114.    Hilburn and AIG are, and were at all times alleged herein, Plaintiff's agents.  As

9    Plaintiff's agents, Hilburn and AIG have and had a duty to help Plaintiff build his modeling career,

10   assist Plaintiff in obtaining modeling jobs, and to protect Plaintiff from exploitation in this challenging

11   industry.  Defendants breached this duty by failing to protect Plaintiff.  Defendants further breached

12   this duty by wrongfully manipulating Plaintiff into believing that certain actions, including, but not

13   limited to, being photographed by Hilburn while posing nude and semi-nude, with an erection and/or

14   while masturbating, were necessary to obtain the modeling jobs Plaintiff was seeking, when in fact

15   they were not, and by exploiting Plaintiff for the purpose of satisfying Hilburn's own prurient interests

16   and/or others' prurient interests and/or to elicit financial gain or other gain from distribution of the

17   images of Plaintiff as pornography.

18       115.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

19   of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

20   humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

21   anxiety, depression, headaches and sleeplessness.  Additionally, Plaintiff has suffered other incidental

22   and consequential damages to be established at the time of trial.  The amount of Plaintiff's damages is

23   not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

24   When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

25   this complaint accordingly.

26       116.    Plaintiff is informed and believes and based thereon alleges that the aforementioned acts

27   of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of

28   Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression,

                                          - 28 -
                                       **COMPLAINT**

1   fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate

2   to punish or set an example of Defendants, and each of them, and to deter such conduct in the future,

3   the exact amount of such damages subject to proof at the time of trial.

4

5                              **ELEVENTH CAUSE OF ACTION**

6                                    **BREACH OF CONTRACT**

7                                    **(Against Hilburn and AIG)**

8       117.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

9   in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

10      118.   In late-April or early-May 2010, Plaintiff, on the one hand, and Hilburn and AIG, on the

11  other hand, entered into a contract whereby Hilburn and AIG would advise, counsel, and direct

12  Plaintiff in the development and enhancement of Plaintiff's professional modeling career.  Pursuant to

13  the contract, Hilburn and AIG were entitled to twenty percent (20%) of Plaintiff's gross compensation

14  earned from any source as a result of Plaintiff's activities in and throughout the modeling field.  It was

15  intended and anticipated by Plaintiff and Hilburn that Plaintiff would move to Los Angeles, sign with a

16  local agency in Los Angeles, and work as a model in Los Angeles.  Thus, the contract was to be

17  performed in California.  In addition, Hilburn and AIG have and continue to receive commissions

18  pursuant to their contract with Plaintiff from agencies located in California.

19      119.   Hilburn and AIG have materially breached their contract with Plaintiff by failing to

20  advise, counsel and direct Plaintiff in the direction of his career and using the contract with Plaintiff as

21  a means to induce Plaintiff to consent to Hilburn photographing and videotaping Plaintiff nude and

22  semi-nude, while masturbating and with an erection, under the guise of Plaintiff fulfilling his

23  obligations under his contract with Hilburn and AIG, among other ways.

24      120.   Plaintiff has fully performed all of his obligations pursuant to his contract with Hilburn

25  and AIG, excluding only those the performance of which was prevented or excused.

26      121.   85.   As a direct and proximate result of the aforesaid wrongful acts of Defendants,

27  and each of them, Plaintiff has been damaged in an amount that is not yet fully ascertainable, but

28  which is believed to be in excess of the jurisdictional limits of this Court.  When Plaintiff has

1  ascertained the full amount of his damages, he will seek leave of court to amend this complaint
2  accordingly.

3

4                          **TWELFTH CAUSE OF ACTION**

5                          **BREACH OF FIDUCIARY DUTY**

6                            **(Against Hilburn and AIG)**

7          122.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained

8  in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

9          123.   Based on the contractual relationship between Plaintiff, on the one hand, and Hilburn

10  and AIG, on the other hand, Hilburn and AIG had a fiduciary duty to help Plaintiff build his modeling

11  career, assist Plaintiff in obtaining modeling jobs, and to protect Plaintiff from exploitation in this

12  challenging industry.

13         124.   Defendants breached this fiduciary duty by failing to protect Plaintiff.  Defendants

14  further breached this duty by wrongfully manipulating Plaintiff into believing that certain actions,

15  including, but not limited to, being photographed by Hilburn while posing nude and semi-nude, with

16  an erection and/or while masturbating, were necessary to obtain the modeling jobs Plaintiff was

17  seeking, when in fact they were not, and by exploiting Plaintiff for the purpose of satisfying Hilburn's

18  own prurient interests and/or others' prurient interests and/or to elicit financial gain or other gain from

19  distribution of the images of Plaintiff as pornography.

20         125.   As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each

21  of them, Plaintiff has suffered severe emotional and mental distress, pain, anxiety, shame, anger, grief,

22  humiliation, nervousness and shock causing physiological symptoms, including, but not limited to,

23  anxiety, depression, headaches and sleeplessness.  Additionally, Plaintiff has suffered other incidental

24  and consequential damages to be established at the time of trial.  The amount of Plaintiff's damages is

25  not yet fully ascertainable, but is believed to be in excess of the jurisdictional limits of this Court.

26  When Plaintiff has ascertained the full amount of his damages, he will seek leave of court to amend

27  this complaint accordingly.

28  ///

126.   Plaintiff is informed and believes and based thereon alleges that the aforementioned acts of Defendants, and each of them, were done intentionally or with a conscious and reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to constitute oppression, fraud, or malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such damages subject to proof at the time of trial.

## THIRTEENTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (Against Hilburn and AIG)

127.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

128.   As alleged herein above, an actual controversy and dispute has arisen between Plaintiff, on the one hand, and Hilburn and AIG, on the other hand.  Specifically, Plaintiff contends that he was fraudulently induced to enter into a contract with Hilburn and AIG, that Hilburn and AIG have materially breached that contract, that Plaintiff's contract with Hilburn and AIG should be rescinded and that Plaintiff has no further obligations under his contract with Hilburn and AIG.

129.   Defendants dispute Plaintiff's contentions.

130.   Wherefore, Plaintiff seeks a judicial determination that the contract alleged herein between Plaintiff, on the one hand, and Hilburn and AIG, on the other hand, be rescinded and that Plaintiff have no further obligations under that contract.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**AS TO THE FIRST CAUSE OF ACTION:**

1.   For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

2.   For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of

1    such damages subject to proof at the time of trial;

2    **AS TO THE SECOND CAUSE OF ACTION:**

3       3.      For an award of general, special, and consequential damages against Defendants, and

4    each of them, according to proof at the time of trial;

5       4.      For punitive and exemplary damages in an amount appropriate to punish or set an

6    example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of

7    such damages subject to proof at the time of trial;

8    **AS TO THE THIRD CAUSE OF ACTION:**

9       5.      For an award of general, special, and consequential damages against Defendants, and

10    each of them, according to proof at the time of trial;

11       6.      For punitive and exemplary damages in an amount appropriate to punish or set an

12    example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of

13    such damages subject to proof at the time of trial;

14    **AS TO THE FOURTH CAUSE OF ACTION:**

15       7.      For an award of general, special, and consequential damages against Defendants, and

16    each of them, according to proof at the time of trial;

17    **AS TO THE FIFTH CAUSE OF ACTION:**

18       8.      For an award of general, special, and consequential damages against Defendants, and

19    each of them, according to proof at the time of trial;

20    **AS TO THE SIXTH CAUSE OF ACTION:**

21       9.      For an award of general, special, and consequential damages against Defendants, and

22    each of them, according to proof at the time of trial;

23       10.     For punitive and exemplary damages in an amount appropriate to punish or set an

24    example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of

25    such damages subject to proof at the time of trial;

26    **AS TO THE SEVENTH CAUSE OF ACTION:**

27       11.     For rescission of the contract between Plaintiff, on the one hand, and Hilburn and AIG

28    on the other hand;

**AS TO THE EIGTH CAUSE OF ACTION:**

12.    For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

13.    For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such damages subject to proof at the time of trial;

14.    For attorney's fees and costs of suit as allowed by law;

**AS TO THE NINTH CAUSE OF ACTION:**

15.    For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

16.    For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such damages subject to proof at the time of trial;

**AS TO THE TENTH CAUSE OF ACTION:**

17.    For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

**AS TO THE ELEVENTH CAUSE OF ACTION:**

18.    For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

**AS TO THE TWELTH CAUSE OF ACTION:**

19.    For an award of general, special, and consequential damages against Defendants, and each of them, according to proof at the time of trial;

20.    For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such damages subject to proof at the time of trial;

**AS TO THE THIRTEENTH CAUSE OF ACTION:**

21.    For a declaration of the parties' respective rights and obligations;

///

**ON EACH CAUSE OF ACTION:**

22.    For pre- and post-judgment interest as allowed by law;

23.    For attorneys' fees as allowed by law;

24.    For cost of suit incurred herein; and

25.    For such other and further relief as the Court may deem just and proper.

Dated:  August 31, 2012

LAW OFFICES OF
ZOMBER & PANAGIOTIS, LLP

By

MATTHEW E. PANAGIOTIS
Attorneys for Plaintiff
WILLIAM STRATTON

- 34 -
COMPLAINT

 ORIGINAL     FILE BY FAX

CM-010

| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* | **FOR COURT USE ONLY** |
|---|---|
| — Peter J. Zomber (SBN 91715) - Matthew E. Panagiotis (SBN 222965)<br>Law Offices of Zomber & Panagiotis, LLP<br>12424 Wilshire Boulevard, Suite 720, Los Angeles, CA 90025 | **FILED**<br>Los Angeles Superior Court |

TELEPHONE NO: (310) 405-0055   FAX NO: (310) 405-0056
ATTORNEY FOR *(Name):* Plaintiff WILLIAM STRATTON

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 1111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

AUG 31 2012

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

CASE NAME:
WILLIAM STRATTON vs. ABERCROMBIE & FITCH CO., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC491420 |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [✓] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (38)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify):* 13
5. This case [ ] is [✓] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 31, 2012
Matthew E. Panagiotis
_____     ▶ _____
(TYPE OR PRINT NAME)              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov



**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
 Damage/Wrongful Death
Uninsured Motorist (46) (*if the
 case involves an uninsured
 motorist claim subject to
 arbitration, check this item
 instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/
  Wrongful Death
Product Liability (*not asbestos or
 toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice–
  Physicians & Surgeons
 Other Professional Health Care
  Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip
  and fall)
 Intentional Bodily Injury/PD/WD
  (e.g., assault, vandalism)
 Intentional Infliction of
  Emotional Distress
 Negligent Infliction of
  Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
 Practice (07)
Civil Rights (e.g., discrimination,
 false arrest) (*not civil
 harassment)* (08)
Defamation (e.g., slander, libel)
 (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice
  (*not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease
  Contract (*not unlawful detainer
  or wrongful eviction)*
 Contract/Warranty Breach–Seller
  Plaintiff (*not fraud or negligence)*
 Negligent Breach of Contract/
  Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open
 book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections
  Case
Insurance Coverage (*not provisionally
 complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
 Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property (*not eminent
  domain, landlord/tenant, or
  foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
 drugs, check this item; otherwise,
 report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court
  Case Matter
 Writ–Other Limited Court Case
  Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor
  Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
 (*arising from provisionally complex
 case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of
  County)
 Confession of Judgment (*non-
  domestic relations)*
 Sister State Judgment
 Administrative Agency Award
  (*not unpaid taxes)*
 Petition/Certification of Entry of
  Judgment on Unpaid Taxes
 Other Enforcement of Judgment
  Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
 above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only (*non-
  harassment)*
 Mechanics Lien
 Other Commercial Complaint
  Case (*non-tort/non-complex)*
 Other Civil Complaint
  (*non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
 Governance (21)
Other Petition (*not specified
 above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult
  Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late
  Claim
 Other Civil Petition

**CIVIL CASE COVER SHEET**

● ORIGINAL ●

FILE BY FAX

| SHORT TITLE: WILLIAM STRATTON vs. ABERCROMBIE & FITCH CO., et al. | CASE NUMBER BC 4 9 1 4 2 0 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES  CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL 10  ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – if you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage). .
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** | | |
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | | |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: WILLIAM STRATTON vs. ABERCROMBIE & FITCH CO., et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)                    **CIVIL CASE COVER SHEET ADDENDUM**                    Local Rule 2.0
LASC Approved 03-04                        **AND STATEMENT OF LOCATION**                        Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| WILLIAM STRATTON vs. ABERCROMBIE & FITCH CO., et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)

LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0

Page 3 of 4

| SHORT TITLE: WILLIAM STRATTON vs. ABERCROMBIE & FITCH CO., et al. | CASE NUMBER |
|---|---|

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br> ☐1. ☑2. ☑3. ☐4. ☑5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 3400 Cahuenga Boulevard Building D, Apt. 103 |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90068 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___August 31, 2012___

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.



I certify that this is a true and correct copy of the
original COMPLAINT on file in this office consisting
of 40 pages. JOHN A. CLARKE, Executive Officer/Clerk of the
Superior Court of California, County of Los Angeles

Date: OCT 1 0 2012                      , Deputy

RICARDO PEREZ

1    **PROOF OF SERVICE - 1013a, 2015.5 C.C.P.**

2    STATE OF CALIFORNIA          ]
                                   ] ss.
3    COUNTY OF LOS ANGELES        ]

4         I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a
5    party to the within action; my business address is DOLAN & ASSOCIATES, 30699 Russell Ranch Road,
     Suite 280, Westlake Village, California 91362.

6         On October 11, 2012, I served the foregoing document described as **NOTICE OF
     REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)**on the interested
7    parties in Re William Stratton v. Abercrombie & Fitch, Co., Court Case No. BC491420, Our Matter No.
8    18980, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

     Matthew E. Panagiotis, Esq.
9    Peter J. Zomber, Esq.
     Law Offices of Zomber & Panagiotis, LLP
10   12424 Wilshire Blvd., Suite 720
     Los Angeles, CA 90025
11   Attorney for Plaintiff

12        I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at
     Westlake Village, California. I am "readily familiar" with the firm's practice of collection and processing
13   correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same
     day with postage thereon fully prepaid at Westlake Village, California, in the ordinary course of business. I
14   am aware that on motion of the party served, service is presumed invalid if postal cancellation date or
15   postage meter date is more than one day after date of deposit for mailing in affidavit.

16        I declare that I am employed in the office of a member of the bar of this court as whose direction
     the service was made.

17        Executed on October 11, 2012, at Westlake Village, California.

18   _____
                                    SANDY BARATTA
19

20

21

22

23

24

25

26

27

28

w:\document\
18980\remova
l of
action.docx

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

DOLAN & ASSOCIATES